# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN D. MINCH, | ) Civil Action No. 2:13-cv-00630 |
| Plaintiff, | ) |
| | ) United States Magistrate Judge |
| v. | ) Cynthia Reed Eddy |
| | ) |
| VALERIE ABBOTT, former Director, | ) |
| Allegheny Correctional Health Services, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Presently pending is Defendant Valerie Abbott's Motion for Summary Judgment with brief in support (ECF Nos. 49 and 50), the Response in Opposition filed by Plaintiff, John D. Minch (ECF No. 57), and the Reply filed by Defendant (ECF No. 59). For the reasons that follow, the Motion for Summary Judgment will be granted.[1]

On October 25, 2013, Plaintiff filed an Amended Complaint, which remains the operative complaint. (ECF No. 27). Plaintiff alleges that Defendant was deliberately indifferent to his serious medical needs by refusing dental care. According to the Amended Complaint, from June 2011 until October 2013, Plaintiff had been in "severe, near constant pain" as a result of "broken teeth cutting into [his] gums." Amended Complaint at 5. Plaintiff contends that he repeatedly requested to be seen by a dentist, but his request was refused "presumably as a cost-saving

---

[1] The parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* ECF Nos. 22, 23, and 25. Under the Federal Magistrate Judges Act ("the Act), a Magistrate Judge's jurisdiction may be conferred by consent of the parties. 28 U.S.C. § 636(c). Under the Act, "[u]pon consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1). Consent of all parties to a case gives the magistrate judge full "authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003).

1

measure." *Id.* He seeks monetary compensation for "real" and punitive damages and completion of all necessary dental work. (Amended Complaint at 3).

Originally named as Defendants were Valerie Abbott -- alleged to be the former Director of Allegheny Correctional Health Services ("ACHS"), and Orlando Harper, the Warden of Allegheny County Jail ("ACJ"). On April 25, 2014 we granted Defendant Harper's Motion to Dismiss for Failure to State a Claim and denied Defendant Abbott's Motion to Dismiss for Failure to State a Claim. (ECF No. 38) Thus, Defendant Abbott is the sole remaining Defendant.

Defendant Abbott has filed a motion for summary judgment. The matter has been fully briefed and is ripe for disposition.

### Standard Of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).

A party claiming that a fact cannot be or is genuinely disputed must support that assertion either by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Moreover, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. *Williams v. Bor. of West Chester*, 891 F.2d 458, 460–461 (3d Cir. 1989) (non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).

The non-moving party cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument, but must "put up or shut up." *Berckeley Inv. Group., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (quoting *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985)). Plaintiff must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322; *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting *Anderson*, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)).

With this standard in mind, we review the evidence of record. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

## Factual Background

Except as otherwise indicated, the following facts are undisputed.

Plaintiff, John D. Minch, is a state prisoner currently incarcerated at SCI Albion. He was admitted to the Allegheny County Jail on April 28, 2009. On that day he signed a consent for medical treatment, received a psychiatric examination, and was prescribed Zoloft for depression, Neurontin for control of his diabetic neuropathy, Metformin for control of diabetes and Ultram. (Medical Records filed under seal, ECF No. 47, at 183-187-88) ("Medical Records"). Plaintiff is allergic to penicillin and tetracycline. (Medical Records at 5).

Shortly thereafter Plaintiff was prescribed Naprosyn to be taken daily. At that time Plaintiff was diagnosed with depression, diabetes, and back pain. (Medical Records at 169). Naprosyn is a nonsteroidal anti-inflammatory drug (NSAID) and is used to relieve pain caused by various conditions such as headaches, muscle aches, tendonitis, dental pain, and menstrual cramps. It also reduces pain, swelling, and joint stiffness caused by arthritis, bursitis, and gout attacks. (ECF No. 49-2 at 1)

The central issue in this lawsuit concerns Plaintiff's dental, rather than overall mental or medical, health. The record evidence shows no complaints from Plaintiff about dental problems from the date of his admission on April 27, 2009 until April 12, 2011.

On April 12, 2011, Plaintiff filled out a Request for Medical Staff Attention indicating that he was experiencing pain caused by a tooth. (Medical Records at 115). He described his problem as "request emergency extraction of broken tooth. Causing severe pain." (Medical Records at 115). The nurse's notes indicate that the patient "DOES NOT TAKE ANTIBIOTICS – WILL NOT ANTIBIOTICS" but describes him as having severe decay and gum inflammation. (Medical Records at 115). She further notes that he had open sores on his hands and arms but had earlier refused to take Bactrim as ordered on March 28, 2011. (Medical Records at 115). She put his name on the list to see a dentist. (Medical Records at 115).

Plaintiff was seen by a dentist on May 12, 2011, at which time the dentist noted extensive decay at teeth 29, 30, and 31. The dentist noted that he needed an x-ray and extraction. (Medical Records at 112). The record is silent as to how frequently prison dentists were available to see patients at the facility. Medical progress notes dated May 15, 2011 and July 11, 2011 do not mention dental issues but rather Plaintiff's need to be prescribed Zoloft and his satisfaction

with the current medication regime (unrelated to any known dental complaints). (Medical Records at 112).

The record evidence shows that there were no further mentions of dental issues until August 22, 2011, when Plaintiff completed a Request for Medical Staff Attention, reporting "I was told over 3 months ago that I would get dental care (extraction). If I can't get the bad teeth pulled please prescribe Tylenol 3 for pain. Thank you." (Medical Records at 102). The next day, August 23, 2011, the nurse wrote in her assessment, "Refer to Dentist". (Medical Records at 102).

Frank Lopez, DDS saw the Plaintiff on October 18, 2011 and the record indicates that two teeth were extracted, numbered 12 and 29. (Medical Records at 100, 102). He was prescribed Tylenol 3 with no follow-up. (Medical Records at 101).

Nearly five months later, on March 5, 2012, Plaintiff completed a Request for Medical Staff Attention in which he stated he was requesting "emergency extraction of bad tooth." (Medical Records at 89). The next day, Dr. Lopez examined Plaintiff noting "multiple grossly decayed teeth, sharp edge." (Medical Records at 89). Dr. Lopez states in his assessment that the Plaintiff declined antibiotics treatment; additional medications were not prescribed as requested because Plaintiff was taking Naprosyn. (Medical Records at 89). Dr. Lopez wrote "will follow up from clinic." (Medical Records at 89).

The record is silent as to any dental complaints or dental treatment of the Plaintiff until eleven months later.

Defendant Abbot's employment at the Allegheny Correctional Health Services began on September 25, 2012. (ECF No. 51 at ¶¶ 1, 2).

The next medical record referencing Plaintiff's dental health is dated February 4, 2013, when he filed another Request for Medical Staff Attention. He requested "emergency extractions. Several damaged teeth causing severe pain." (Medical Records at 50). He was seen the next day. Written below the request for attention are notes by several different individuals. It includes signatures by "Vanessa Henderson, RN", "David Humphreys, CRNP" and a third illegible signature. (Medical Records at 50). Again, Plaintiff asked about painkillers but refused antibiotics. (Medical Records at 50). A nurse noted "several teeth decayed into gum line," assessed very poor dentition, and made note of Plaintiff's pain. (Medical Records at 50). The record further indicates that Plaintiff was told that if he refused to take antibiotics, there would be no further treatment at that time, but he would be put on a list to be seen by a dentist. (Medical Records at 50). The medical staff notes that Plaintiff was taking Naprosyn 500 mg, Neurontin[2] 900 mg, Zoloft, and Glucophage[3] 100 mg.

Two days later, on February 6, 2013, Plaintiff wrote an Inmate's Request to Staff Member[4] in which he stated the following:

> I have been asking for dental care at various times over the past 2 years. My condition has gotten to a point where it can no longer be put off. I am in constant pain. I have been informed by medical staff that I will not be receiving the care that I need. If dental care is not available in-house I need to be taken to an outside facility. Please acknowledge receipt of this grievance as soon as possible.

(Medical Records at 197).

---

[2] Neurontin is used to treat nerve pain conditions, including diabetic neuropathy. http://www.webmd.com/drugs/2/drug-9845-8217/neurontin-oral/gabapentin-oral/details.

[3] This is used to control blood sugar levels in patients with type 2 diabetes. http://www.webmd.com/drugs/2/drug-11294/glucophage-oral/details.

[4] Plaintiff indicates that he used the Request Slip as a "Grievance Form" and that the Request Slip was treated as Complaint / Grievance #02-13. *See* Exh. 2 and 3 to Amended Complaint.

The next day, February 7, 2013, Major Mikulan, the ACJ grievance officer, forwarded Plaintiff's complaint to the Medical Department, asking that the department forward an answer to him as soon as possible. (Medical Records at 197).

On February 11, 2013, Defendant Valerie Abbott wrote a memorandum concerning Plaintiff's grievance. This is the first and only time that Defendant Valerie Abbott's name appears in the 197 page Medical Record. There is no record evidence – and indeed, Plaintiff does not appear to contend -- that Defendant Abbott was made aware of any other complaints by Plaintiff prior to the grievance officer's request.

Her title is listed (apparently, erroneously) as "Director, ACHD"[5] and the memorandum is on Allegheny Correctional Health Services, Inc. letterhead. (Medical Records at 195). She states:

> [Plaintiff], who is complaining of teeth pain, has been seen several times in the last week or so. He is already on Naprosyn and Neurontin for pain but he says he wants something else. He needs to be on antibiotics but has refused them. He is on the list to be seen by dental. Taking the antibiotics as prescribed along with the pain medication should alleviate most of Mr. Minch's problem until he can be seen by a dentist.

(Medical Records at 195).

Defendant Abbott is a registered nurse licensed to practice nursing in the Commonwealth of Pennsylvania, who was first hired as the Director of Quality Improvement and Training at Allegheny Correctional Health Services; as noted *supra*, her employment began on September 25, 2012. (ECF No. 51 at ¶¶ 1, 2). In that position, she did not direct or control the medical care given to inmates – including Plaintiff -- at the Allegheny County Jail. (ECF No. 51 ¶¶ 3, 4). Rather, during her employment, medical care was provided by physicians, mid-level practitioners, nurses and other health-care practitioners including dentists; those individuals directed the medical care given to inmates at the Allegheny County Jail. (ECF No. 51 at ¶ 5).

---

[5] In fact she was Director of Quality Improvement and Training (ECF No. 51 at ¶¶ 1, 2)

Defendant has no information, had no input, and had no responsibility for the medical care requested and/or received by John Minch on or before her hiring date of September 25, 2012 or after she left her position with Allegheny Correctional Health Services on April 5, 2013. (ECF No. 51 at ¶¶ 8, 9).

On March 31, 2013, Plaintiff wrote the following letter to Defendant Harper, the Warden of ACJ (previously a defendant in this action):

> I have already made a grievance report to Major Mikulan on February 06 regarding the refusal of the medical staff to provide necessary dental care. The grievance # is 02-13. I have still not been seen by a dentist. Further, Valerie Abbott has given fake information claiming I was "seen several times" when I was only seen once. If I do not receive care I intend to file a Federal lawsuit. If I need to bring this grievance to a higher authority than you, please inform me of such. The law library on 8D is broken and I have no access to the Inmate Handbook, if such information exists there.

Amended Complaint, Exh. 3. According to the Amended Complaint, Plaintiff received no response from the Warden to his letter. Defendant Abbott left her employment six days after Plaintiff wrote this letter to the Warden. There is no evidence that she ever received a copy of this letter and if she had, what authority she would have had to address it.

The Allegheny County Correctional Health Services contract with the Allegheny County Jail expired on August 31, 2013. Plaintiff subsequently received dental care, including extraction of teeth, from the successor provider, Corizon, in September, 2013. (Medical Records at 21, 22).

Plaintiff was convicted of first-degree murder and burglary on November 13, 2013 and was sentenced to imprisonment for life on February 13, 2014. (ECF Nos. 38 at n.4, 49-1).

Plaintiff disputes a number of the above facts. He contends that although Defendant Abbott reported he was "on the list to be seen by dental," he was not seen until October 2013 by a new medical provider and that he "was not on any list until [he] filed another request in

9

September." Amended Complaint at 3. Further, Plaintiff contends that he was not seen "several times" as Defendant Abbott reported, but rather was seen only one time by the Triage Nurse and that was after he had requested to be seen by a dentist. Resp. at 2 (ECF No. 32). Plaintiff acknowledges he was prescribed Naprosyn and Neurontin for pain, but he states that neither are appropriate for severe pain. Amended Complaint, at 5. He contends that the Allegheny Correctional Health Services had the ability to send a patient to an outside facility for medical care which they themselves cannot provide; Plaintiff contends that "Valerie Abbott refused to allow that, presumably as a cost-saving measure." (Medical Records at 193). There is no record evidence, however, that cost-saving came into play.

### DISCUSSION

Defendant contends she is entitled to the entry of summary judgment in her favor because the evidence adduced to date fails to establish that she knew or was aware of a risk to Plaintiff's health. She contends that his medical care was sufficient to withstand a constitutional challenge because he was seen by a dentist or nurse numerous times during her six month tenure. She argues that at best, Plaintiff can establish negligence, which is insufficient to support a constitutional challenge. She argues that the record in this case shows only a difference of opinion over the course of proper medical treatment, rather than deliberate indifference to a serious medical need.

The Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983"), provides, in pertinent part,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983, thereby, creates a cause of action for violations of the United States Constitution and federal laws but does not itself grant any substantive rights; in order to establish a claim under the statute, a plaintiff "'must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law.'" *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (*quoting Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141 (3d Cir. 1995)). Defendant has moved for summary judgment on Plaintiff's section 1983 claim, arguing that Plaintiff has failed to create genuine issues of material facts entitling his case to go to a jury.

The Eighth Amendment requires prison officials to provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–105, (1976).[6] In order for an inmate to establish a claim, the inmate must show: (1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104. A prison official is deliberately indifferent if he has knowledge that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid that harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may also be deliberately indifferent by "intentionally denying or delaying access to medical care." *Gamble*, 429 U.S. at 104–05.

While prisoners are entitled to treatment, prisoners have "no right to choose a specific form of medical treatment" when the treatment provided is reasonable. *Poole v. Taylor*, 466 F.Supp.2d 578, 579 (D. Del. 2006). Thus, "mere disagreement as to the appropriate treatment is

---

[6] As we noted in our Memorandum Opinion and Order dated April 25, 2014 (ECF No 38 at n.4), at the time Plaintiff initiated this lawsuit, he was a pretrial detainee, however, the United States Court of Appeals for the Third Circuit has indicated that a pretrial detainee's right to adequate medical care should be analyzed under the well-settled standard established in *Estelle v. Gamble*, 429 U.S. 97 (1976), which provides that prison officials are required "to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle,* 429 U.S. 97 (1976)). Thus, at a minimum, the "deliberate indifference" standard of *Estelle* must be met. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

insufficient to state a constitutional violation." *Blackston v. Corr. Med. Services,* 499 F.Supp.2d 601, 605 (D. Del. 2007) (*citing Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir.2004)).

If construed as an Eighth Amendment allegation, "[c]orrectional defendant - administrators who are not themselves physicians cannot 'be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Davis v. Thomas,* 558 F. App'x 150, 2014 WL 905588 at *4 (3d Cir. Mar. 10, 2014) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)). As explained by our court of appeals, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Id.* (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). "If the non-medical prison official has no <u>actual knowledge</u> that prison doctors are mistreating a prisoner, he or she "will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* (emphasis added). *See also Rodriguez v. Sec'y Pa. Dep't Corr.*, 441 F. App'x 919, 923, 2011 WL 3555424 (3d Cir. 2011) (finding that the defendants' decisions and responses to a prisoner's complaints were based upon medical records and did not constitute deliberate indifference); *see also, Durmer*, 991 F.2d at 69 (where a plaintiff was receiving care from prison doctor, no deliberate indifference existed simply because of the plaintiff's disagreements or medical complaints with his care and the defendant's failure to respond directly to them).

In accordance with the Eighth Amendment's prohibition against cruel and unusual punishment, the government is obliged "to provide medical care for those whom it is punishing by incarceration." *Estelle,* 429 U.S. at 103. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the

Eighth Amendment." *Id*. at 104 (citation omitted). "[W]hether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed . . . deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id*. at 104–05 (citations omitted).

A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." Id.

The "deliberate indifference" a plaintiff must allege lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other" and is frequently equated with recklessness as that term is defined in criminal law. *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). This standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny Cnty. Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979). Where a prisoner has received medical care and only the adequacy of the treatment is disputed, courts are often reluctant to second guess professional medical judgment. *See id.*

However, deliberate indifference can be manifested by an intentional refusal to provide care, delayed medical treatment, and the denial of prescribed medical treatment. *See Durmer v. O'Carroll,* 991 F.2d 64 (3d Cir. 1993); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care.").

13

The Court assumes that Plaintiff's poor dentition constituted a serious medical need.[7] It is well established that an inmate does not have a constitutional right to see a doctor on demand or the doctor of his choice. Nor is an inmate entitled to a particular course of treatment or to have particular tests performed. *Jetter v. Beard,* 130 F. App'x 523, 526, 2005 WL 1051180 (3d Cir. 2005), *cert. denied*, 546 U.S. 985 (noting that while plaintiff would have preferred a different course of treatment, his preference does not establish an Eighth Amendment cause of action). Moreover, the United States Court of Appeals for the Third Circuit has held that, under the deliberate indifference standard, prison medical authorities have "considerable latitude" in exercising judgment in the diagnosis and treatment of inmate patients and courts should "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment which remains a question of sound professional judgment." *Carter v. Smith*, 2012 WE 1864006 at *1 (3d Cir. May 23, 2012) (quoting *Pierce*, 612 F.2d at 762).

The record in this case shows only a difference of opinion over the course of proper medical treatment, rather than a deliberate indifference giving rise to a constitutional claim under § 1983. *Garrett v. Wexford Health*, 2014 Westlaw 41886921 (W.D. Pa. August 21, 2014).

Plaintiff argues that Defendant claimed he needed to be on antibiotics when there was no evidence at all of a bacterial infection. "Ms. Abbott also cited my prescribed use of Naprosyn and Neurontin for pain, but neither of these medications are appropriate or indicated for severe pain caused by broken teeth cutting into a person's gums." (Amended Complaint at 5). He alleges that she "inflicted cruel and unusual punishment and showed deliberate indifference towards me by refusing me medical care when she was 100% able to send me to a facility where I could be treated." (Amended Complaint at 5). As noted above, the law is clear that

---

[7] *See Board v Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) ("a number of other courts have also held that dental pain accompanied by various degrees of attenuated medical harm may constitute an objectively serious medical need.").

Plaintiff has no right to choose a specific form of medical treatment, and that his disagreement with the appropriate treatment does not state a constitutional violation under the circumstances herein.

Moreover, the Court finds that the evidence of record does not support Plaintiff's claim that Defendant was deliberately indifferent to his medical needs. The evidence does not reflect that Defendant Abbott's involvement in the matter consisted of anything more than reviewing Plaintiff's grievance and reporting her findings back to the grievance officer. There is no evidence of record to show that she was asked to provide medical care and refused to do so, that she personally chose to deny or delay treatment, that she made any decision in that regard, or that she was in any way personally responsible for the delay or denial. She was the Director of Quality Improvement and training, and did not control the medical care given to inmates at the jail.

Nevertheless, the undisputed record evidence establishes that her statements in the February 11, 2013 memorandum were accurate. Plaintiff had been seen several times in the recent past and he was taking two painkillers at the time (Naprosyn and Neurontin), the treating medical professionals had recorded their belief that he needed to be on antibiotics on prior occasions but refused them, and he was on a list to be seen by dental. We are reluctant to second guess this professional medical judgment. As for plaintiff's contention that he was not on any such list, this assertion is belied by the fact that prior references to placement on a list to be seen by a dentist in fact came to fruition and he was consequently treated. The medical record has several references to Plaintiff's (unexplained, we note) refusal to take antibiotics dating back to his very first request for help with his teeth on April 12, 2011, when the nurse noted that he "DOES NOT TAKE ANTIBIOTICS – WILL NOT ANTIBIOTICS." (Medical Records at 115).

The medical record dated February 5, 2013, six days prior to Defendant Abbott's memorandum, states unequivocally that Plaintiff asked for additional pain killers, wanted no antibiotics, and "if Pt. will not take antibiotics – no further [treatment] at this time." but he was informed that he was put on a dentist list. (Medical Records at 50). Her alleged failure to respond directly to his medical complaint cannot render her deliberately indifferent because he was already being treated by the prison dentist and medical staff. Even so, Plaintiff has not shown any evidence that she had any actual knowledge that he was being mistreated.

Under these circumstances, no reasonable jury could find an Eighth Amendment violation in this matter. Therefore, the court will grant the Defendant's Motion for summary judgment.

## Conclusion

For all the foregoing reasons, the Motion for Summary Judgment filed by Defendant Abbott will be granted.

## ORDER

**AND NOW**, this 13th day of May, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED** that the Defendant Valerie Abbott, former Director, Allegheny Correctional Health Services' Motion for Summary Judgment (ECF Nos. 49) is **GRANTED** in its entirety, and Plaintiff's claims against her are dismissed with prejudice as a matter of law.

IT IS FURTHER ORDERED that the Clerk of Court shall docket this case CLOSED.

AND IT IS FURTHER ORDERED that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

*s/ Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

cc.    John D. Minch
LK-7954
SCI Camp Hill
P.O. Box 200
Camp Hill, PA 17001

Stanley A. Winikoff
Dell, Moser, Lane & Loughery, LLC
Email: swinikoff@winikofflaw.com